**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED
2026 SEP 22 A 11: 32

**TAMEKA DALE,**
**T.D. a minor child by and through his Next of Kin, TAMEKA DALE, ASHLEY DAVIS,**
**B.G. a minor child, By and through his Next of Kin, ASHLEY DAVIS.**

**Plaintiffs,**

**v.** **CASE NO.**

2:26-cv-00742-BL-JTA

**ALABAMA HIGH SCHOOL ATHLETIC ASSOCIATION; and HEATH HARMON, in his official capacity as the Executive Director of the Alabama High School Athletic Association, DAVID DIAZ, in his official capacity as the Principal of Mary G. Montgomery High School, and CHRESAL D. THREADGILL, in her official capacity as the Superintendent of Mobile County Pubic School Systems.**

**Defendants.**

# COMPLAINT

## PARTIES AND JURISDICTION

1. T.D., is a minor child under the age of nineteen years of age and hereinafter is a resident citizen of Mobile County, Alabama. He brings the forgoing cause of action through his next of kin, his mother, Tameka Dale. T.D. is a student-athlete who participates in high school football at Mary G.

Montgomery High School, (MGM) a school within the Mobile County Public School System school zone, in Semmes, Alabama.

2. Tameka Dale is over the age of nineteen years of age, and is the mother of T.D. She and resides with T.D. In Mobile County, Alabama.

3. B.G is a minor child under nineteen years of age, and hereinafter is a resident citizen of Mobile County, Alabama. He brings the forgoing cause of action through his next of kin, his mother, Ashley Davis. B.G. is a student-athlete who participates in high school football at Mary G. Montgomery High School, (MGM) a school within the Mobile County Public School System school zone, in Semmes, Alabama.

4. Ashley Davis is over nineteen years of age and is the mother of B.G.. She resides with her son B.G., in Mobile County Alabama.

5. Defendant, Alabama High School Athletic Association, (Hereinafter known as AHSAA) is an association of high schools in Alabama that governs and controls interscholastic athletics of member schools within the State of Alabama, for which the overwhelming majority of said members accept federal funding. Based on information and belief, the AHSAA is a private non-profit organization, that has been held to be a state actor by Alabama Courts, see, *Lee v. Macon County Board of Education*, 283 F. Supp.

194 (1968) . It's employees enjoy state employment benefits and participate in the employee Retirement Systems of Alabama, here after referred to as RSA. In its Mission Statement, the AHSAA states, "The Alabama High School Athletic Association (AHSAA) serves member schools through interscholastic competition by enhancing student learning, sportsmanship, safety and lifelong values. With integrity as its foundation, the AHSAA consistently governs the rules created by member schools." The headquarters for the AHSAA is located in Montgomery, Alabama.

6. Defendant HEATH HARMON is over the age of nineteen years and is being named in his official capacity as the Executive Director of the AHSAA.

7. Defendant, DAVID DIAZ, is over nineteen years of age and is being named in his official capacity as the principal of Mary G. Montgomery High School, a high school within the Mobile County Public School System, located in Mobile County, Alabama.

8. Defendant, CHRESAL D. THREADGILL, is over nineteen years of age and is being named in her official capacity as the Superintendent of Education for the Mobile County Public School Systems

9. The AHSAA Appellate Boards, their presiding officers and members have not been named as a party to this action based on the belief that those boards and members are a part of the Defendant AHSAA. If the defendants or the Court believe that to be an incorrect position, and that it is necessary to make those individuals and boards parties to this suit to perfect jurisdiction for remedy, the plaintiffs can promptly amend this action.

i. Plaintiff alleges that Defendant, AHSAA has adopted a recruiting rule found in Rule VI, Section 12 of the AHSAA Handbook (the Handbook), and that the AHSAA lacks jurisdiction to enforce portions of that rule because those portions have not been approved under the AHSAA constitution and by-laws. The Plaintiffs alleges the rule, as written and applied, is unenforceable as applied to the Plaintiffs because it lacks proper jurisdiction, is arbitrarily applied to the Plaintiffs, and /or is enforced through collusion and fraud among the Defendants, in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States of America.

ii. Plaintiffs also allege Rule VI § 12 as amended, unjustly limits the plaintiffs' free speech in that the rule as amended and applied to the plaintiffs, prohibits *any* communication between Plaintiffs and any coach or administrator at MGM High School. This portion of the rule also allows for

communication between the Plaintiffs and the staff, coaches or administrators of MGM, provided that communication is not for athletic purposes, all in violation of the Fourteenth Amendment to the Constitution of the United States of America.

iii. This Court has jurisdiction over this action pursuant to 28 U.S.C.A. §§ 2201 and 1331, as well as supplemental jurisdiction under §1367(a).

iv. With respect to the Defendants' state court claims, the Alabama Supreme Court has long held that a Circuit Court may overrule the rules and/or decisions of the AHSAA "if the acts of the association are the result of fraud, lack of jurisdiction, collusion or arbitrariness" and in those cases "the courts will intervene to protect an injured party's rights." *Scott v. Kilpatrick*, 237 So. 2d 652 (Ala. 1970). The Plaintiffs assert that the Defendants acted as such.

v. Venue is proper in he Middle District of Alabama as that is where the Alabama High School Athletic Association is based.

## STATEMENT OF THE FACTS

### A. The AHSAA Investigation of Mary G. Montgomery High School

10. In the spring of 2026, the Alabama High School Athletic Association ("AHSAA") conducted an investigation into the football program at Mary G. Montgomery High School ("MGM"). At the conclusion of that investigation, the AHSAA issued written notification finding that several students had been impermissively recruited through an event conducted by MGM and commonly referred to as a "Signing Day Party." See Plaintiff's Exhibit 1.

11. The Signing Day Party was not unique to the spring of 2025. MGM had conducted substantially similar events in the spring of 2024 and again in the spring of 2025 and 2026. The event was intended for incoming students and their parents and was designed to communicate the school's expectations for students who intended to participate in the football program during the upcoming school year.

12. During the event, coaches and school administrators spoke with incoming students and their parents concerning the academic, behavioral, and athletic expectations applicable to members of the football program. Students enrolling at MGM were also asked to sign a compact acknowledging the standards and expectations applicable to them as student-athletes.

13. MGM did not individually solicit the Plaintiffs, or any other particular student or their parents to attend the Signing Day Party. Instead, notice of

the event was published through MGM's website and social-media platforms and was available generally to persons viewing those public sources.

**B. T.D's Decision to Attend Mary G. Montgomery High School**

14. During the 2024-2025 academic year, Plaintiff, T.D., was an eighth-grade honor student attending Clark-Shaw Magnet School within the Mobile County Public School System.

15. Based upon his residence, T.D. was zoned to attend Vigor High School beginning with the 2025-2026 academic year. At the time T.D. and his mother were considering his high-school options, Vigor High School was classified as a failing school under standards utilized by the Alabama State Department of Education.

16. Because T.D. was an honor student and his mother placed a high priority upon his education, Mrs. Dale did not want TD to attend a school classified as failing. She therefore investigated other available high-school options for her son.

17. After considering several schools, Mrs. Dale and T.D. decided that he would attend Mary G. Montgomery High School. Their decision was based upon a combination of factors, including MGM's academic opportunities, its extracurricular programs, including band and music, the availability of football, and the fact that a number of T.D.'s longtime friends planned to attend MGM.

18. Because T.D. was transferring to MGM without making a bona fide move into the MGM attendance zone, T.D. and his mother understood that AHSAA transfer rules would prevent him from participating in varsity athletics for one year. T.D. nevertheless enrolled at MGM and did not participate in varsity athletic competition during the 2025-2026 school year.

19. On or about May 7, 2025, Mrs. Dale traveled to Mary G. Montgomery High School for the purpose of completing the paperwork necessary to enroll T.D. for his freshman year. See Plaintiffs Exhibit 2.

20. It was during that visit—after the decision to attend MGM had already been made and while Mrs. Dale was completing T.D.'s enrollment paperwork—that Mrs. Dale first learned that MGM would be conducting its Signing Day Party the following day, May 8, 2025.

21. On May 8, 2025, Mrs. Dale brought T.D. to MGM to attend the Signing Day Party. While there, T.D. and his mother met or spoke with MGM coaches, administrators, counselors, and other school personnel regarding the expectations associated with T.D.'s attendance at MGM and his anticipated participation in the football program.

22. By the time T.D. attended the Signing Day Party, however, he and his mother had already selected MGM as the high school he would attend, and Mrs. Dale had already completed the necessary enrollment paperwork. The

only decision that Mrs. Dale and T.D. had not made was whether T.D. would also participate in band.

23. Neither Head Football Coach Zach Golson nor any other MGM coach recruited T.D. to attend MGM for the purpose of participating in athletics. Neither a booster nor any person acting as a third-party "go-between" recruited T.D.. on MGM's behalf. Coach Golson likewise did not visit Clark-Shaw Magnet School for the purpose of recruiting T.D. to MGM.

**C. B.G.'s Decision to Attend Mary G. Montgomery, High School**

24. B.G. also attended Clark Shaw Magnet School in Mobile County, Alabama. In the Spring of 2024, he was nearing graduation from Clark Shaw Magnet School.

25. B.G. was zoned to attend Baker High School in the Mobile County Public School System.

26. B.G. was an outstanding student and maintained "A and B" grades at Clark Shaw Magnet School. Because he was an outstanding academic student and Baker High School High School did not offer

27. In the Spring of 2024, she completed the necessary paper work to enroll B.G. at MGM High School after graduation from Clark Shaw Magnet School. B.G. graduated from Clark Shaw Magnet School in May of 2024.

28. On or about May 8, 2024, B.G attended with his mother a "Signing Day" party for freshman who intended to play football in the fall of the 2024 school year at MGM High School.

29. The "Signing Day" party was to provide new and incoming students and parents information regarding the MGM football program. The expectations the coaching staff and administration had for their players, as well as information concerning fall football camp and the upcoming season.

30. The "Signing Day" party had been advertised by word or mouth and through the web page for MGM High School and their social media accounts.

31. Ashley Davis learned of the event and decided to take B.G. to MGM High School for the purpose of attending the Signing Day party. There they met some of the coaching staff and learned more about the expectations the football program and staff demand of players.

32. At no time did any coach from MGM or someone acting on behalf of a coach from MGM recruit Ashley Davis or B.G. to the Signing Day event, and the event had absolutely no baring on Ashley Davis' decision to enroll B.G. MGM High School.

33. B.G.'s enrollment was based upon the academic opportunities offered by MGM High School and was not based upon his desire to play football at the school.

34. At the time B.G. Attended the Signing Day Party, he had already made the decision to attend MGM High School and completed the necessary paper work to be able to attend MGM in the fall of 2024.

### D. The AHSAA's Eligibility Determination and Sanctions

35. At the conclusion of its investigation, the AHSAA determined that B.G.. and MGM Head Football Coach Zach Golson had violated Rule VI, § 12 of the AHSAA Handbook, entitled "Recruiting." (See Defendant Exhibit 1 )

36. The AHSAA based B.G.'s violation, in whole or in substantial part, upon his attendance at the May 2024 Signing Day Party and his communications with MGM personnel concerning athletics during that visit.

37. As a result of its determination, the AHSAA declared B.G.. permanently ineligible to participate in athletics at Mary G. Montgomery High School.

38. The AHSAA also imposed sanctions upon MGM and Coach Golson. MGM's football program was placed on restrictive probation for one year and rendered ineligible for postseason competition during the 2026-2027 football season. MGM was assessed a monetary fine of Three Hundred Dollars ($300.00), and Coach Golson was barred from coaching at an AHSAA member school for one year.

39. Despite the AHSAA's determination that T.D. And B.G. are permanently ineligible to participate in athletics at MGM, They both. have remained enrolled at Mary G. Montgomery High School.

40. T.D. and B.G. are the only students identified in the AHSAA's May 18, 2026 infractions letter who have remained enrolled at MGM following the AHSAA's eligibility ruling. Their continued enrollment at MGM despite being prohibited from participating in athletics is consistent with their parents' position that their decisions to attend MGM were based upon reasons extending well beyond participation in football.

### F. Historical Language of Rule VI, § 12

41. The version of Rule VI, § 12 appearing in the 2015-2016 AHSAA Handbook provided, in pertinent part:

"No person connected in any way with a school may contact a student or prospective student, or his/her parents or guardian, who resides outside of the school district to inquire or encourage them to transfer or enroll in their school for the chief purpose of participating in interscholastic athletics."

42. The 2015-2016 Rule further expressly provided:

"It is permissible for a coach, or anyone else connected with a school, to talk or speak with a student(s) or parent(s) who, on their own, visit their school for any specific purpose."

43. The Rule separately prohibited the offering of material or financial inducements or enticements to students for the purpose of engaging in athletics.

44. Under the 2015-2016 version, violation of the Recruiting Rule subjected the contacted student to permanent ineligibility at the school where the violation occurred, subjected a violating coach to a one-year prohibition against coaching at an AHSAA member school, and authorized restrictive probation and monetary sanctions against the offending school. (See Plaintiffs' Exhibit 15)

**G. Changes Appearing in the 2016-2017 Handbook**

45. The following academic year, the 2016-2017 Handbook contained additional language in the form of two "Notes" appearing within Rule VI, § 46.

47. The first Note provided:

"This rule includes and applies to any third party 'go-between' initiated by school officials."

48. A second Note appearing within the Rule provided:

"*Any contact with a student* (including elementary students) enrolled in another school, including, but not limited to, phone calls, emails, texts, social media, etc. is prohibited."

49. The underlying language permitting a coach or other person connected with a school to speak with students or parents who independently visited the school "for any specific purpose" remained in the Rule. Thus, the published 2016-2017 Rule contained both the affirmative permission for independently initiated visits and the newly published Note broadly stating that "[a]ny contact" with a student enrolled in another school was prohibited. These portions of the rule obviously conflicted with one another.

50. The 2016-2017 Handbook reflected a highlighted change to the word "may" in the sanctions portion of § 12. The two Notes appearing in § 12 were not similarly highlighted as changes. Highlighted provisions in the handbook indicted new language in the rule that was not in the previous published version of the AHSAA Handbook. (See Plaintiffs' Exhibit 16)

51. The AHSAA's publication news letter concerning action taken by the Legislative Council for the 2016-2017 academic year reported that a proposed amendment to Rule VI, § 12 had received the required two-thirds vote. According to the materials identified by Plaintiffs, that publication addressed the proposed amendment but did not identify either of the two newly

appearing Notes as amendments submitted to and approved by the Legislative Council. (See Plaintiffs' Exhibit 9)

**G. Additional Changes to the "Go-Between" Note**

52. The 2017-2018 AHSAA Handbook contained an additional change to the Note concerning third-party "go-between" communications. (See Plaintiffs Exhibit 5)

53. Whereas the 2016-2017 version stated that the Rule included a third-party "go-between" initiated by school officials, the 2017-2018 version expanded the language to address impermissible contact with third-party "go-between" individuals and identified examples including trainers, private instructors, and outside coaches. (See Plaintiffs' Exhibit 16)

54. This language *was highlighted* in the 2017-2018 Handbook as having been changed from the previous version.

**H. Expansion of the "Any Contact" Note**

55. A further material change appeared in the 2018-2019 Handbook. Before that change, the applicable Note prohibited contact with a student enrolled in another school through such means as telephone calls, emails, text messages, and social media.

56. In the 2018-2019 Handbook, that Note was expanded to provide:

"Any contact/communication with a student, a ***student's parents, or any other family member*** (including elementary students) enrolled in another school, including, but not limited to, phone calls, emails, texts, social media, etc. is prohibited." This provision *was highlighted* in the Handbook, indicating it contained new language not previously found in prior Handbooks. (See Plaintiffs' Exhibit 6)

57. The new language therefore expanded the persons with whom communication was prohibited beyond the student himself or herself to include the student's parents and other family members.

**I. Addition of the Phrase "Other Than Athletics"**

58. A further substantive change to the text of Rule VI, § 12 appeared between the 2021-2022 and 2022-2023 AHSAA Handbooks.

59. The 2021-2022 Handbook continued to provide:

"It is permissible for a coach, or anyone else connected with a school, to talk or speak with a student(s) or parent(s) who, on their own, visit their school for any specific purpose." (See Plaintiffs' Exhibit 7)

60. In the 2022-2023 Handbook, that provision was changed to provide:

"It is permissible for a coach, or anyone else connected with a school, to talk or speak with a student(s) or parent(s) who, on their own, visit their school for any specific purpose, *other than athletics*." (See Plaintiffs' Exhibit 8)

61. The phrase **"other than athletics"** therefore appeared in the published Rule and, for the first time, expressly excluded athletics from the purposes for which a student or parent who independently visited a school could permissibly speak with a coach or other person connected with that school.

62. The phrase "other than athletics" *was not* highlighted in the 2022-2023 Handbook as a change from the preceding year.

63. The AHSAA's published account of the April 2022 Legislative Council meeting states that the Legislative Council considered thirty-nine proposals during that meeting and that only one proposal—identified as Proposal 19—received the two-thirds vote necessary for adoption. (See Plaintiff's Exhibit 10) . The materials presently identified by Plaintiffs do not reflect that the addition of the phrase "other than athletics" to Rule VI, § 12 was among the amendments approved at that meeting.

### I. The Rule Applied to T.D. and B.G.

64. The Rule enforced against T.D. and B.G. is therefore materially different from the language appearing in earlier versions of Rule VI, § 12.

65. The earlier Rule focused upon contacting or encouraging a student to transfer or enroll at a school **"for the chief purpose of participating in interscholastic athletics"** and expressly permitted coaches and other

school personnel to speak with students or parents who independently visited the school "for any specific purpose."

66. The Rule ultimately applied by the AHSAA to T.D. And B.G. contains additional language prohibiting "any contact/communication" with students, parents, and family members enrolled at another school and restricts otherwise independently initiated school visits to a "specific purpose, other than athletics."

67. T.D. and B.G.'s attendance at the MGM Signing Day Party occurred only after their mothers had selected MGM as the school they would attend and had completed the paperwork necessary to enroll them there.

68. Nevertheless, the AHSAA relied upon T.D. and B.G.'s attendance at that event and their communications with MGM personnel concerning athletics while at the school in determining that Rule VI, § 12 had been violated and in permanently declaring them both ineligible to participate in athletics at Mary G. Montgomery High School.

## <u>COUNT I</u>

### 42 U.S.C. § 1983 — VIOLATION OF THE FOURTEENTH AMENDMENTS

**FACIAL AND AS-APPLIED CHALLENGE
TO ASHSAA RULE VI, § 12
PLAINTIFF T.D.**

69. Plaintiff, T.D. realleges and incorporates by reference each preceding paragraphs of this Complaint as though fully set forth herein.

70. The First Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, prohibits governmental actors from abridging freedom of speech.

71. The Alabama High School Athletic Association exercises pervasive regulatory authority over interscholastic athletics conducted by Alabama public schools, including the authority to establish eligibility requirements governing public-school students and to impose sanctions upon public schools, public-school coaches, and students.

72. Public-school officials participate extensively in the governance, administration, and enforcement structure of the AHSAA.

73. By virtue of the pervasive entwinement between the AHSAA and Alabama's public-school system, Plaintiff alleges that Defendants act under color of state law when establishing and enforcing eligibility rules governing students attending Alabama public schools, see *Lee v. Macon County Board of Education*, 283 F. Supp. 194 (M.D. Ala. 1968), *St. Paul's Episcopal School v. Alabama High School Athletic Association*, Civil Action No. 18-0241-WS-B (S.D. Ala. June 27, 2018), *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 121 S. Ct. 924, 148 L. Ed. 2D 807 (2001).

74. Rule VI, § 12 of the AHSAA Handbook is denominated a prohibition against "Recruiting."

75. The legitimate purpose of a recruiting rule is to prevent coaches, schools, boosters, or persons acting on their behalf from improperly soliciting, inducing, coercing, or encouraging students to enroll at a particular school for athletic purposes.

76. The challenged Note to Rule VI, § 12, however, extends substantially beyond prohibiting recruiting.

77. The Note provides, in pertinent part, that "any contact/communication" with a student, the student's parents, or other family members enrolled in another school is prohibited and expressly encompasses telephone calls, emails, text messages, social-media communications, and other forms of expression.

78. On its face, the challenged provision does not require that the communication constitute recruiting.

79. It does not require that the communication solicit the student to enroll.

80. It does not require that the communication encourage the student to transfer.

81. It does not require that the communication contain an inducement or promise.

82. It does not require that the communication exert undue influence or coercion upon the student.

83. It does not require that the communication be initiated by the coach.

84. It does not require that athletics be the student's reason for selecting the school.

85. And it does not require that the challenged communication occur before the student or his parent has already decided where the student will attend school.

86. Instead, Defendants have interpreted and enforced the challenged Note as a categorical prohibition against communications between coaches and students, parents, and family members associated with another school regardless of the content of the communication.

87. Such communications necessarily include truthful, non-misleading and non-coercive speech concerning athletic programs, participation requirements, expectations, schedules, practices, eligibility requirements, enrollment procedures, and other matters in which students and their parents possess legitimate interests.

88. The First Amendment protects the dissemination and receipt of truthful information concerning a school's athletic programs.

89. In *Tennessee Secondary School Athletic Association v. Brentwood Academy*, 551 U.S. 291 (2007), the United States Supreme Court recognized the legitimate authority of a state athletic association to prohibit actual recruiting and undue influence directed toward prospective student-athletes.

90. *Brentwood*, however, did not recognize an unlimited governmental authority to prohibit communications concerning athletics. To the contrary, the Supreme Court recognized that truthful communications concerning a school's athletic programs implicate First Amendment protections even when the school markets its athletic achievements as a reason for enrolling in the school and distinguished public dissemination of information from direct, individualized recruiting involving potential coercion or undue influence.

91. The challenged AHSAA provision contains no comparable limitation.

92. Plaintiff T.D. is not a voluntary member of the AHSAA and did not voluntarily surrender his constitutional rights as a condition of membership in the Association.

93. Plaintiff, T.D., was an eighth-grade student attending Clark-Shaw Magnet School when he and his mother began considering the high school he would attend.

94. Plaintiff, T.D., and his mother selected Mary G. Montgomery High School for academic, social, extracurricular, and other reasons unrelated to any solicitation by MGM's football program.

95. On May 7, 2025, T.D.'s mother traveled to MGM and completed the paperwork necessary to enroll Plaintiff at the school.

96. Only after T.D. and his mother had selected MGM and his mother had completed the necessary enrollment paperwork did she learn of the Signing Day Party scheduled for the following day.

97. T.D. therefore could not have been induced, persuaded, coerced, or recruited to select MGM by communications occurring at an event of which he and his mother were unaware until after the decision to enroll had already been made.

80 On May 8, 2025, T.D. and his mother attended the publicly advertised Signing Day Party and communicated with MGM coaches and school personnel regarding expectations associated with Plaintiff's anticipated participation in football.

98. Those communications did not cause T.D. to select MGM, did not induce him to transfer to MGM, and did not constitute coercive or individualized solicitation intended to cause Plaintiff to enroll at MGM.

99. Nevertheless, Defendants treated T.D.'s participation in those communications as prohibited conduct under Rule VI, § 12 and imposed the extraordinary sanction of permanent athletic ineligibility upon Plaintiff at MGM.

100. The challenged provision therefore burdens T.D.'s ability to speak with and receive information from coaches and public-school employees concerning

athletics even where neither T.D. nor the coach engages in recruiting, solicitation, inducement, coercion, or undue influence.

101. Defendants possess a legitimate interest in preventing improper athletic recruiting.

102. That legitimate interest does not authorize Defendants to prohibit substantially more protected expression than necessary to prevent recruiting.

103. A categorical prohibition against "any contact/communication," untethered from solicitation, inducement, coercion, undue influence, or any intent to cause a student to enroll for athletic purposes, reaches constitutionally protected speech substantially beyond the legitimate governmental interest asserted by Defendants.

104. The challenged provision is therefore unconstitutionally overbroad and violates the Fourteenth Amendemtn both facially and as applied to Plaintiff.

105. Defendants' permanent disqualification of T.D. from athletics at MGM based upon protected communications additionally constitutes an unconstitutional penalty imposed upon T.D. for the exercise and receipt of protected speech.

106. Defendants acted under color of state law in enforcing the challenged provision and thereby deprived T.D. of rights secured by the First Amendment as applied to T.D. through Fourteenth Amendment in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff T.D., respectfully requests that this Court:

a. Enter a declaratory judgment that the challenged "any contact/communication" provision of Rule VI, § 12 violates the First and Fourteenth Amendments, facially and/or as applied to Plaintiff;

b. Preliminarily and permanently enjoin Defendants from enforcing the challenged provisions against Plaintiff based upon truthful, non-coercive communications that do not constitute actual recruiting, solicitation, inducement, coercion, or undue influence;

c. Enjoin Defendants from enforcing Plaintiff's permanent ineligibility for participation in athletics at Mary G. Montgomery High School arising from the communications challenged herein;

d. Restore T.D's eligibility to participate in interscholastic athletics at Mary G. Montgomery High School;

e. Award T.D. reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f. Award such compensatory damages as may be appropriate for the violation of T.D.'s constitutional rights; and

g. Grant such other and further relief as this Court deems just and appropriate.

h. T.D. demands a jury trial on said issues.

## COUNT II

### 42 U.S.C. § 1983 — VIOLATION OF THE FOURTEENTH AMENDMENTS

#### FACIAL AND AS-APPLIED CHALLENGE TO ASHSAA RULE VI, § 12 AS TO PLAINTIFF B.G.

107. Plaintiff, B.G. realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

108. The First Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, prohibits governmental actors from abridging freedom of speech.

109. The Alabama High School Athletic Association exercises pervasive regulatory authority over interscholastic athletics conducted by Alabama public schools, including the authority to establish eligibility requirements governing public-school students and to impose sanctions upon public schools, public-school coaches, and students.

110. Public-school officials participate extensively in the governance, administration, and enforcement structure of the AHSAA.

111. By virtue of the pervasive entwinement between the AHSAA and Alabama's public-school system, Plaintiff alleges that Defendants act under

color of state law when establishing and enforcing eligibility rules governing students attending Alabama public schools, see *Lee v. Macon County Board of Education*, 283 F. Supp. 194 (M.D. Ala. 1968), *St. Paul's Episcopal School v. Alabama High School Athletic Association*, Civil Action No. 18-0241-WS-B (S.D. Ala. June 27, 2018), *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 121 S. Ct. 924, 148 L. Ed. 2D 807 (2001).

112. Rule VI, § 12 of the AHSAA Handbook is denominated a prohibition against "Recruiting."

113. The legitimate purpose of a recruiting rule is to prevent coaches, schools, boosters, or persons acting on their behalf from improperly soliciting, inducing, coercing, or encouraging students to enroll at a particular school for athletic purposes.

114. The challenged Note to Rule VI, § 12, however, extends substantially beyond prohibiting recruiting.

115. The Note provides, in pertinent part, that "any contact/communication" with a student, the student's parents, or other family members enrolled in another school is prohibited and expressly encompasses telephone calls, emails, text messages, social-media communications, and other forms of expression.

116. On its face, the challenged provision does not require that the communication constitute recruiting.

117. It does not require that the communication solicit the student to enroll.

118. It does not require that the communication encourage the student to transfer.

119. It does not require that the communication contain an inducement or promise.

120. It does not require that the communication exert undue influence or coercion upon the student.

121. It does not require that the communication be initiated by the coach.

122. It does not require that athletics be the student's reason for selecting the school.

123. And it does not require that the challenged communication occur before the student or his parent has already decided where the student will attend school.

124. Instead, Defendants have interpreted and enforced the challenged Note as a categorical prohibition against communications between coaches and students, parents, and family members associated with another school regardless of the content of the communication.

125. Such communications necessarily include truthful, non-misleading and non-coercive speech concerning athletic programs, participation

requirements, expectations, schedules, practices, eligibility requirements, enrollment procedures, and other matters in which students and their parents possess legitimate interests.

126. The First Amendment protects the dissemination and receipt of truthful information concerning a school's athletic programs.

127. In *Tennessee Secondary School Athletic Association v. Brentwood Academy*, 551 U.S. 291 (2007), the United States Supreme Court recognized the legitimate authority of a state athletic association to prohibit actual recruiting and undue influence directed toward prospective student-athletes.

128. *Brentwood*, however, did not recognize an unlimited governmental authority to prohibit communications concerning athletics. To the contrary, the Supreme Court recognized that truthful communications concerning a school's athletic programs implicate First Amendment protections even when the school markets its athletic achievements as a reason for enrolling in the school and distinguished public dissemination of information from direct, individualized recruiting involving potential coercion or undue influence.

129. The challenged AHSAA provision contains no comparable limitation.

130. Plaintiff B.G. is not a voluntary member of the AHSAA and did not voluntarily surrender his constitutional rights as a condition of membership in the Association.

131. On May 9, 2024, B.G. and his mother attended the publicly advertised Signing Day Party and communicated with MGM coaches and school personnel regarding expectations associated with B.G's anticipated participation in football.

132. Those communications did not cause B.G. to select MGM, did not induce him to transfer to MGM, and did not constitute coercive or individualized solicitation intended to cause B.G. to enroll at MGM.

133. Nevertheless, Defendants treated B.G.'s participation in those communications as prohibited conduct under Rule VI, § 12 and imposed the extraordinary sanction of permanent athletic ineligibility upon Plaintiff at MGM.

134. The challenged provision therefore burdens B.G.'s ability to speak with and receive information from coaches and public-school employees concerning athletics even where neither B.G. nor the coach engages in recruiting, solicitation, inducement, coercion, or undue influence.

135. Defendants possess a legitimate interest in preventing improper athletic recruiting.

136. That legitimate interest does not authorize Defendants to prohibit substantially more protected expression than necessary to prevent recruiting.

137. A categorical prohibition against "any contact/communication," untethered from solicitation, inducement, coercion, undue influence, or any

intent to cause a student to enroll for athletic purposes, reaches constitutionally protected speech substantially beyond the legitimate governmental interest asserted by Defendants.

138. The challenged provision is therefore unconstitutionally overbroad and violates the First Amendment as applied to the states through the Fourteenth Amendment both facially and as applied to B.G.

139. Defendants' permanent disqualification of B.G. from athletics at MGM based upon protected communications additionally constitutes an unconstitutional penalty imposed upon B.G. for the exercise and receipt of protected speech.

140. Defendants acted under color of state law in enforcing the challenged provision and thereby deprived B.G. of rights secured by the First and Fourteenth Amendments in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff B.G., respectfully requests that this Court:

a. Enter a declaratory judgment that the challenged "any contact/communication" provision of Rule VI, § 12 violates the First and Fourteenth Amendments, facially and/or as applied to Plaintiff;

b. Preliminarily and permanently enjoin Defendants from enforcing the challenged provisions against Plaintiff based upon truthful, non-coercive

communications that do not constitute actual recruiting, solicitation, inducement, coercion, or undue influence;

c. Enjoin Defendants from enforcing B.G.'s permanent ineligibility for participation in athletics at Mary G. Montgomery High School arising from the communications challenged herein;

d. Restore B.G.'s eligibility to participate in interscholastic athletics at Mary G. Montgomery High School;

e. Award B.G. reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f. Award such compensatory damages as may be appropriate for the violation of Plaintiff's constitutional rights; and

g. Grant such other and further relief as this Court deems just and appropriate.

h. B.G. demands a jury trial on said issues.

**COUNT III**

**42 U.S.C. § 1983 — VIOLATION OF THE FOURTEENTH AMENDMENTS**

**FACIAL AND AS-APPLIED CHALLENGE TO ASHSAA RULE VI, § 12 PLAINTIFF TAMEKA DALE**

141. Plaintiff, TAMEKA DALE. realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

142. The First Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, prohibits governmental actors from abridging freedom of speech.

143. The Alabama High School Athletic Association exercises pervasive regulatory authority over interscholastic athletics conducted by Alabama public schools, including the authority to establish eligibility requirements governing public-school students and to impose sanctions upon public schools, public-school coaches, and students.

144. Public-school officials participate extensively in the governance, administration, and enforcement structure of the AHSAA.

145. By virtue of the pervasive entwinement between the AHSAA and Alabama's public-school system, Plaintiff alleges that Defendants act under color of state law when establishing and enforcing eligibility rules governing students attending Alabama public schools, see *Lee v. Macon County Board of Education*, 283 F. Supp. 194 (M.D. Ala. 1968), *St. Paul's Episcopal School v. Alabama High School Athletic Association*, Civil Action No. 18-0241-WS-B (S.D. Ala. June 27, 2018), *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 121 S. Ct. 924, 148 L. Ed. 2D 807 (2001).

146. Rule VI, § 12 of the AHSAA Handbook is denominated a prohibition against "Recruiting."

147. The legitimate purpose of a recruiting rule is to prevent coaches, schools, boosters, or persons acting on their behalf from improperly soliciting, inducing, coercing, or encouraging students to enroll at a particular school for athletic purposes.

148. The challenged Note to Rule VI, § 12, however, extends substantially beyond prohibiting recruiting.

149. The Note provides, in pertinent part, that "any contact/communication" with a student, the student's parents, or other family members enrolled in another school is prohibited and expressly encompasses telephone calls, emails, text messages, social-media communications, and other forms of expression.

150. On its face, the challenged provision does not require that the communication constitute recruiting.

151. It does not require that the communication solicit the student to enroll.

152. It does not require that the communication encourage the student to transfer.

153. It does not require that the communication contain an inducement or promise.

154. It does not require that the communication exert undue influence or coercion upon the student.

155. It does not require that the communication be initiated by the coach.

156. It does not require that athletics be the student's reason for selecting the school.

157. And it does not require that the challenged communication occur before the student or his parent has already decided where the student will attend school.

158. Instead, Defendants have interpreted and enforced the challenged Note as a categorical prohibition against communications between coaches and students, parents, and family members associated with another school regardless of the content of the communication.

159. Such communications necessarily include truthful, non-misleading and non-coercive speech concerning athletic programs, participation requirements, expectations, schedules, practices, eligibility requirements, enrollment procedures, and other matters in which students and their parents possess legitimate interests.

160. The First Amendment protects the dissemination and receipt of truthful information concerning a school's athletic programs.

161. In *Tennessee Secondary School Athletic Association v. Brentwood Academy*, 551 U.S. 291 (2007), the United States Supreme Court recognized the legitimate authority of a state athletic association to prohibit actual recruiting and undue influence directed toward prospective student-athletes.

162. *Brentwood*, however, did not recognize an unlimited governmental authority to prohibit communications concerning athletics. To the contrary, the Supreme Court recognized that truthful communications concerning a school's athletic programs implicate First Amendment protections even when the school markets its athletic achievements as a reason for enrolling in the school and distinguished public dissemination of information from direct, individualized recruiting involving potential coercion or undue influence.

163. The challenged AHSAA provision contains no comparable limitation.

164. Plaintiff, Tameka Dale. is not a voluntary member of the AHSAA and did not voluntarily surrender his constitutional rights as a condition of membership in the Association.

165. Mrs. Dale is the mother of T.D and is responsible for making education choices for T.D. such as where T.D. will attend school, what courses of study will he take and the extracurricular activities for which he will participate.

166. Plaintiff, Tameka Dale, selected Mary G. Montgomery High School for academic, social, extracurricular, and other reasons unrelated to any solicitation by MGM's football program.

167. On May 7, 2025, Tameka Dale traveled to MGM and completed the paperwork necessary to enroll her son, T.D. at the school.

168. On May 8, 2025, T.D. and Tameka Dale attended the Signing Day Party and seeking information regarding the MGM football program in

for the purpose of educating herself regarding the expectations of the program. At this point, Mrs Dale was considering having T.D. participate in the MGM High School Band or playing varsity football. While at the party, Mrs Dale communicated with coaches and administrators regarding the football program. Based upon those conversations, she reached the decision to allow T.D. to participate in varsity football program at MGM.

169. Those communications did not cause Mrs. Dale to select MGM for T.D., did not induce her to have T.D. transfer to MGM, and did not constitute coercive or individualized solicitation intended to cause Mrs. Dale to enroll at T.D. at MGM.

170. Nevertheless, Defendants treated Plaintiff's participation in those communications as prohibited conduct under Rule VI, § 12 and imposed the extraordinary sanction of permanent athletic ineligibility upon Mrs. Dale at MGM.

171. The challenged provision therefore burdens Mrs. Dale's ability to speak with and receive information from coaches and public-school employees concerning athletics even where neither Plaintiff nor the coach engages in recruiting, solicitation, inducement, coercion, or undue influence.

172. Defendants possess a legitimate interest in preventing improper athletic recruiting.

173. That legitimate interest does not authorize Defendants to prohibit substantially more protected expression than necessary to prevent recruiting.

174. A categorical prohibition against "any contact/communication," untethered from solicitation, inducement, coercion, undue influence, or any intent to cause a student to enroll for athletic purposes, reaches constitutionally protected speech substantially beyond the legitimate governmental interest asserted by Defendants.

175. The challenged provision is therefore unconstitutionally overbroad and violates the First Amendment both facially and as applied to Mrs. Dale through the Fourteenth Amendment.

176. Defendants' permanent disqualification of T.D. from athletics at MGM based upon protected communications additionally constitutes an unconstitutional penalty imposed upon T.D. for the exercise and receipt of protected speech by his mother.

177. Defendants acted under color of state law in enforcing the challenged provision and thereby deprived Plaintiff of rights secured by the First and Fourteenth Amendments in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff, Tameka Dale, respectfully requests that this Court:

a. Enter a declaratory judgment that the challenged "any contact/communication" provision of Rule VI, § 12 violates the First and Fourteenth Amendments, facially and/or as applied to Plaintiff;

b. Preliminarily and permanently enjoin Defendants from enforcing the challenged provisions against Mrs. Dale and / or T.D. based upon truthful, non-coercive communications that do not constitute actual recruiting, solicitation, inducement, coercion, or undue influence;

c. Enjoin Defendants from enforcing T.D.'s permanent ineligibility for participation in athletics at Mary G. Montgomery High School arising from the communications challenged herein;

d. Restore T.D.'s eligibility to participate in interscholastic athletics at Mary G. Montgomery High School;

e. Award Tameka Dale reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f. Award such compensatory damages as may be appropriate for the violation of Mrs. Dale's constitutional rights; and

g. Grant such other and further relief as this Court deems just and appropriate.

h. Mrs. Dale demands a jury trial on said issues.

## COUNT IV

## 42 U.S.C. § 1983 — VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

### FACIAL AND AS-APPLIED CHALLENGE TO ASHSAA RULE VI, § 12 PLAINTIFF ASHLEY DAVIS

178. Plaintiff, ASHLEY DAVIS. realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

179. The First Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, prohibits governmental actors from abridging freedom of speech.

180. The Alabama High School Athletic Association exercises pervasive regulatory authority over interscholastic athletics conducted by Alabama public schools, including the authority to establish eligibility requirements governing public-school students and to impose sanctions upon public schools, public-school coaches, and students.

181. Public-school officials participate extensively in the governance, administration, and enforcement structure of the AHSAA.

182. By virtue of the pervasive entwinement between the AHSAA and Alabama's public-school system, Plaintiff alleges that Defendants act under color of state law when establishing and enforcing eligibility rules governing students attending Alabama public schools, see *Lee v. Macon County Board of Education*, 283 F. Supp. 194 (M.D. Ala. 1968), *St. Paul's Episcopal School v. Alabama High School Athletic Association*, Civil Action No. 18-0241-WS-B (S.D. Ala. June 27, 2018), *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 121 S. Ct. 924, 148 L. Ed. 2D 807 (2001).

183. Rule VI, § 12 of the AHSAA Handbook is denominated a prohibition against "Recruiting."

184. The legitimate purpose of a recruiting rule is to prevent coaches, schools, boosters, or persons acting on their behalf from improperly soliciting, inducing, coercing, or encouraging students to enroll at a particular school for athletic purposes.

185. The challenged Note to Rule VI, § 12, however, extends substantially beyond prohibiting recruiting.

186. The Note provides, in pertinent part, that "any contact/communication" with a student, the student's parents, or other family members enrolled in another school is prohibited and expressly encompasses telephone calls,

emails, text messages, social-media communications, and other forms of expression.

187. On its face, the challenged provision does not require that the communication constitute recruiting.

188. It does not require that the communication solicit the student to enroll.

189. It does not require that the communication encourage the student to transfer.

190. It does not require that the communication contain an inducement or promise.

191. It does not require that the communication exert undue influence or coercion upon the student.

192. It does not require that the communication be initiated by the coach.

193. It does not require that athletics be the student's reason for selecting the school.

194. And it does not require that the challenged communication occur before the student or his parent has already decided where the student will attend school.

195. Instead, Defendants have interpreted and enforced the challenged Note as a categorical prohibition against communications between coaches and students, parents, and family members associated with another school regardless of the content of the communication.

196. Such communications necessarily include truthful, non-misleading and non-coercive speech concerning athletic programs, participation requirements, expectations, schedules, practices, eligibility requirements, enrollment procedures, and other matters in which students and their parents possess legitimate interests.

197. The First Amendment protects the dissemination and receipt of truthful information concerning a school's athletic programs.

198. In *Tennessee Secondary School Athletic Association v. Brentwood Academy*, 551 U.S. 291 (2007), the United States Supreme Court recognized the legitimate authority of a state athletic association to prohibit actual recruiting and undue influence directed toward prospective student-athletes.

199. *Brentwood*, however, did not recognize an unlimited governmental authority to prohibit communications concerning athletics. To the contrary, the Supreme Court recognized that truthful communications concerning a school's athletic programs implicate First Amendment protections even when the school markets its athletic achievements as a reason for enrolling in the school and distinguished public dissemination of information from direct, individualized recruiting involving potential coercion or undue influence.

200. The challenged AHSAA provision contains no comparable limitation.

201. Plaintiff Ashley Davis is not a voluntary member of the AHSAA and did not voluntarily surrender his constitutional rights as a condition of membership in the Association.

202. Plaintiff, Ashley Davis, is the mother of B.G. and is responsible for making education choices for B.G. such as where B.G. will attend school, what courses of study will he take and the extracurricular activities for which he will participate.

203. Plaintiff, Ashley Davis, selected Mary G. Montgomery High School for academic, social, extracurricular, and other reasons unrelated to any solicitation by MGM's football program.

204. On or about May 9, 2025, B.G. and Plaintiff, Ashley Davis, attended the Signing Day Party and seeking information regarding the MGM football program in for the purpose of educating herself regarding the expectations of the program. While at the party, Mrs. Davis communicated with coaches and administrators regarding the football program. Based upon those conversations, she reached the decision to allow B.G. to participate in the varsity football program at MGM.

205. Those communications did not cause Mrs. Davis to select MGM for B.G., did not induce her to have B.G. transfer to MGM, and did not constitute coercive or individualized solicitation intended to cause Mrs. Davis to enroll at B.G. at MGM.

206. Nevertheless, Defendants treated Mrs. Davis' participation in those communications as prohibited conduct under Rule VI, § 12 and imposed the extraordinary sanction of permanent athletic ineligibility upon B.G. at MGM.

207. The challenged provision therefore burdens Mrs. Davis' ability to speak with and receive information from coaches and public-school employees concerning athletics even where neither Mrs. Davis nor the coach engages in recruiting, solicitation, inducement, coercion, or undue influence.

208. Defendants possess a legitimate interest in preventing improper athletic recruiting.

209. That legitimate interest does not authorize Defendants to prohibit substantially more protected expression than necessary to prevent recruiting.

210. A categorical prohibition against "any contact/communication," untethered from solicitation, inducement, coercion, undue influence, or any intent to cause a student to enroll for athletic purposes, reaches constitutionally protected speech substantially beyond the legitimate governmental interest asserted by Defendants.

211. The challenged provision is therefore unconstitutionally overbroad and violates the First Amendment both facially and as applied to Mrs. Davis by and through the Fourteenth Amendment.

212. Defendants' permanent disqualification of B.G. from athletics at MGM based upon protected communications additionally constitutes an

unconstitutional penalty imposed upon Mrs. Davis for the exercise and receipt of protected speech.

213. Defendants acted under color of state law in enforcing the challenged provision and thereby deprived Mrs. Davis of rights secured by the First and Fourteenth Amendments in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiff, Ashley Davis, respectfully requests that this Court:

a. Enter a declaratory judgment that the challenged "any contact/communication" provision of Rule VI, § 12 violates the First and Fourteenth Amendments, facially and/or as applied to Plaintiff;

b. Preliminarily and permanently enjoin Defendants from enforcing the challenged provisions against Mrs. Davis and / or B.G. based upon truthful, non-coercive communications that do not constitute actual recruiting, solicitation, inducement, coercion, or undue influence;

c. Enjoin Defendants from enforcing B.G.'s permanent ineligibility for participation in athletics at Mary G. Montgomery High School arising from the communications challenged herein;

d. Restore B.G.'s eligibility to participate in interscholastic athletics at Mary G. Montgomery High School;

e. Award Ashley Davis reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f. Award such compensatory damages as may be appropriate for the violation of Plaintiff's constitutional rights; and

g. Grant such other and further relief as this Court deems just and appropriate.

**h. Plaintiff demands a jury trial on said issues.**

## COUNT V.

## 42 U.S.C. § 1983 — VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

## AS-APPLIED CHALLENGE TO AHSAA RULE VI, SECTION 12

### AS TO T.D. AND TO TOMEKA DALE

214. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

215. The Equal Protection Clause of the Fourteenth Amendment prohibits a state actor from intentionally treating similarly situated persons differently without constitutionally sufficient justification.

216. Defendant Alabama High School Athletic Association ("AHSAA"), through Rule VI, Section 12 and the Notes and interpretations appended thereto, permits a prospective student and his or her parent or guardian,

acting on their own initiative, to visit an AHSAA member school and communicate with school personnel concerning virtually any aspect of the school other than athletics.

217. Under AHSAA's interpretation and enforcement of Rule VI, Section 12, a prospective student and his or her parent may voluntarily visit a school and communicate with school personnel regarding academics, curriculum, advanced courses, music, band, theater, clubs, extracurricular activities, facilities, student life, and other programs offered by the school without violating the AHSAA's recruiting rule.

218. AHSAA nevertheless prohibits or materially restricts the same prospective student and parent from engaging in otherwise comparable communications with school personnel when the subject matter of the communication concerns athletics.

219. Accordingly, prospective students and their parents who voluntarily visit an AHSAA member school for the purpose of obtaining information are similarly situated in all material respects, yet AHSAA treats them differently depending upon the content and subject matter of the information sought or discussed.

220. T.D. and his mother voluntarily sought information concerning Mary G. Montgomery High School and were not individually solicited, recruited, contacted, or induced by an MGM coach to visit the school.

221. T.D.'s mother had already undertaken the necessary steps to enroll T.D. at Mary G. Montgomery High School before learning of the event or communication which AHSAA subsequently characterized as impermissible recruiting.

222. T.D. and his mother therefore did not attend Mary G. Montgomery High School as the result of individualized athletic solicitation or recruiting by an MGM coach or other representative of the school's athletic program.

223. Nevertheless, AHSAA treated the communications involving T.D. And his mother differently from communications that would have been permissible had T.D. and his mother discussed academics, music, student activities, or other non-athletic aspects of Mary G. Montgomery High School.

224. The distinction imposed upon T.D and his mother were based upon the fact that the subject matter of the communication concerned athletics.

225. The Supreme Court has recognized that the Equal Protection Clause protects persons from intentional and arbitrary differential treatment, including differential treatment created by the express terms of a rule or by

the manner in which a rule is administered. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

226. The distinction imposed by AHSAA is particularly constitutionally significant because the differential treatment burdens speech and the receipt of information protected by the First Amendment.

227. In *Tennessee Secondary School Athletic Association v. Brentwood Academy*, 551 U.S. 291, 296–97, 127 S. Ct. 2489, 2495, 168 L. Ed. 2d 166 (2007), the Supreme Court expressly recognized that the First Amendment protects a school's right to publish truthful information concerning its athletic programs and its right to attempt to persuade prospective students and their parents that excellence in athletics is a reason to enroll.

228. The Supreme Court further distinguished constitutionally protected communications directed to the public at large from direct, personalized communications occurring in a coercive recruiting environment and emphasized that the athletic association in *Brentwood* had not prohibited the dissemination of truthful information concerning athletics. *Id.* at 297–298.

229. The circumstances involving T.D. and his mother bear none of the material characteristics of the individualized, direct, and potentially coercive recruiting conduct addressed in *Brentwood*. T.D. and his mother voluntarily sought information concerning Mary G. Montgomery High School, and the

decision to enroll T.D. at MGM preceded the allegedly prohibited athletic communication.

230. AHSAA's application of Rule VI, Section 12 to T.D. and his mother therefore does not merely distinguish between prohibited recruiting and permissible non-recruiting conduct. Instead, as applied to T.D. and his mother,, the Rule distinguishes between otherwise permissible communications based upon *whether the subject matter of the communication is athletics*.

231. A prospective student who voluntarily visits Mary G. Montgomery High School may inquire about the school's academic programs without forfeiting eligibility; may inquire about its music or band programs without forfeiting eligibility; and may inquire about its clubs and extracurricular activities without forfeiting eligibility, yet, under AHSAA's interpretation of Rule VI, Section 12, T.D. nor his mother could not participate in materially similar communications concerning the school's football program without subjecting T.D. to permanent athletic ineligibility at that school.

232. AHSAA's application of Rule VI, Section 12 therefore intentionally subjects T.D. and his mother to materially different treatment from similarly situated prospective students based solely upon the athletic content or purpose of the communication.

233. Preventing actual recruiting, exploitation of minors, coercive solicitation, and improper competitive advantages may constitute legitimate interests of an interscholastic athletic association. *Brentwood*, 551 U.S. at 296–299. Those interests, however, do not provide an unlimited constitutional justification for prohibiting truthful athletic communications between school personnel and a student and parent who independently and voluntarily sought information concerning the school.

234. As applied to T.D. and his mother, there was no individualized solicitation, coercion, athletic inducement, or recruiting communication that caused T.D. or his mother to select Mary G. Montgomery High School.

235. The differential treatment imposed upon T.D. and his mother therefore bears no constitutionally sufficient relationship to AHSAA's asserted interest in preventing coercive or improper athletic recruiting and instead penalizes T.D. because of the athletic subject matter of otherwise permissible communications.

236. AHSAA's enforcement of Rule VI, Section 12 against T.D. and his mother, resulted in him being declared permanently ineligible to participate in interscholastic athletics at Mary G. Montgomery High School, while students who voluntarily seek and receive comparable information concerning non-athletic programs suffer no comparable penalty.

237. By intentionally treating T.D and his mother differently from similarly situated prospective students and families based upon the athletic content of the communications at issue, and by imposing permanent athletic ineligibility upon T.D. as a consequence of those communications, Defendants have deprived T.D. and his mother, Tomeka Dale of the equal protection of the laws secured by the Fourteenth Amendment.

238. Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983 in applying and enforcing Rule VI, Section 12 against T.D.

239. As a direct and proximate result of Defendants' unconstitutional application of Rule VI, Section 12, T.D and his mother have suffered and continues to suffer irreparable injury, including the loss of his opportunity to participate in interscholastic athletics at Mary G. Montgomery High School.

240. T.D. and his mother are therefore entitled to declaratory and prospective injunctive relief pursuant to 42 U.S.C. § 1983 and other applicable law declaring AHSAA's application of Rule VI, Section 12 unconstitutional as applied to T.D. and Tomeka Dale and enjoining Defendants from enforcing the resulting declaration of permanent ineligibility against T.D.

WHEREFORE, Plaintiffs, T.D and Tomeka Dale., respectfully requests that this Court:

a. Enter a declaratory judgment that the challenged "any contact/communication" provision of Rule VI, § 12 violates the First and Fourteenth Amendments, facially and/or as applied to Plaintiff;

b. Preliminarily and permanently enjoin Defendants from enforcing the challenged provision against Plaintiff based upon truthful, non-coercive communications that do not constitute actual recruiting, solicitation, inducement, coercion, or undue influence;

c. Enjoin Defendants from enforcing Plaintiff's permanent ineligibility at Mary G. Montgomery High School arising from the communications challenged herein;

d. Restore Plaintiff's eligibility to participate in interscholastic athletics at Mary G. Montgomery High School;

e. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f. Award such compensatory damages as may be appropriate for the violation of Plaintiff's constitutional rights; and

g. Grant such other and further relief as this Court deems just and appropriate.

h. T.D. and Tomeka Dale demand a jury trial on said issues.

**COUNT VI**

## 42 U.S.C. § 1983 — VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

## AS-APPLIED CHALLENGE TO AHSAA RULE VI, SECTION 12

**AS TO B.G. AND TO ASHLEY DAVIS**

241. Plaintiffs realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

242. The Equal Protection Clause of the Fourteenth Amendment prohibits a state actor from intentionally treating similarly situated persons differently without constitutionally sufficient justification.

243. Defendant Alabama High School Athletic Association ("AHSAA"), through Rule VI, Section 12 and the Notes and interpretations appended thereto, permits a prospective student and his or her parent or guardian, acting on their own initiative, to visit an AHSAA member school and communicate with school personnel concerning virtually any aspect of the school other than athletics.

244. Under AHSAA's interpretation and enforcement of Rule VI, Section 12, a prospective student and his or her parent may voluntarily visit a school and

communicate with school personnel regarding academics, curriculum, advanced courses, music, band, theater, clubs, extracurricular activities, facilities, student life, and other programs offered by the school without violating the AHSAA's recruiting rule.

245. AHSAA nevertheless prohibits or materially restricts the same prospective student and parent from engaging in otherwise comparable communications with school personnel when the subject matter of the communication concerns athletics.

246. Accordingly, prospective students and their parents who voluntarily visit an AHSAA member school for the purpose of obtaining information are similarly situated in all material respects, yet AHSAA treats them differently depending upon the content and subject matter of the information sought or discussed.

247. B.G. and his mother, Ashley Davis voluntarily sought information concerning Mary G. Montgomery High School and were not individually solicited, recruited, contacted, or induced by an MGM coach to visit the school.

248. Mrs. Davis had already undertaken the necessary steps to enroll T.D. at Mary G. Montgomery High School before learning of the event or

communication which AHSAA subsequently characterized as impermissible recruiting.

249. B.G. and his mother therefore did not attend Mary G. Montgomery High School as the result of individualized athletic solicitation or recruiting by an MGM coach or other representative of the school's athletic program.

250. Nevertheless, AHSAA treated the communications involving B.G. and his mother differently from communications that would have been permissible had B.G. and his mother discussed academics, music, student activities, or other non-athletic aspects of Mary G. Montgomery High School.

251. The distinction imposed upon B.G. and his mother was based upon the fact that the subject matter of the communication concerned athletics.

252. The Supreme Court has recognized that the Equal Protection Clause protects persons from intentional and arbitrary differential treatment, including differential treatment created by the express terms of a rule or by the manner in which a rule is administered. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

253. The distinction imposed by AHSAA is particularly constitutionally significant because the differential treatment burdens speech and the receipt of information protected by the First Amendment.

254. In *Tennessee Secondary School Athletic Association v. Brentwood Academy*, 551 U.S. 291, 296–97, 127 S. Ct. 2489, 2495, 168 L. Ed. 2d 166 (2007), the Supreme Court expressly recognized that the First Amendment protects a school's right to publish truthful information concerning its athletic programs and its right to attempt to persuade prospective students and their parents that excellence in athletics is a reason to enroll.

255. The Supreme Court further distinguished constitutionally protected communications directed to the public at large from direct, personalized communications occurring in a coercive recruiting environment and emphasized that the athletic association in *Brentwood* had not prohibited the dissemination of truthful information concerning athletics. *Id.* at 297–298.

256. The circumstances involving B.G. and his mother bear none of the material characteristics of the individualized, direct, and potentially coercive recruiting conduct addressed in *Brentwood*. B.G. and his mother voluntarily sought information concerning Mary G. Montgomery High School, and the decision to enroll B.G. at MGM preceded the allegedly prohibited athletic communication.

257. AHSAA's application of Rule VI, Section 12 to B.G. And his mother therefore does not merely distinguish between prohibited recruiting and permissible non-recruiting conduct. Instead, as applied to B.G. and his

mother, the Rule distinguishes between otherwise permissible communications based upon *whether the subject matter of the communication is athletics.*

258. A prospective student who voluntarily visits Mary G. Montgomery High School may inquire about the school's academic programs without forfeiting eligibility; may inquire about its music or band programs without forfeiting eligibility; and may inquire about its clubs and extracurricular activities without forfeiting eligibility, yet, under AHSAA's interpretation of Rule VI, Section 12, B.G. nor his mother could not participate in materially similar communications concerning the school's football program without subjecting T.D. to permanent athletic ineligibility at that school.

259. AHSAA's application of Rule VI, Section 12 therefore intentionally subjects B.G. to materially different treatment from similarly situated prospective students based solely upon the athletic content or purpose of the communication.

260. Preventing actual recruiting, exploitation of minors, coercive solicitation, and improper competitive advantages may constitute legitimate interests of an interscholastic athletic association. *Brentwood*, 551 U.S. at 296–299. Those interests, however, do not provide an unlimited constitutional justification for prohibiting truthful athletic communications between school

personnel and a student and parent who independently and voluntarily sought information concerning the school.

261. As applied to B.G. and his mother, there was no individualized solicitation, coercion, athletic inducement, or recruiting communication that caused B.G. or his mother to select Mary G. Montgomery High School.

262. The differential treatment imposed upon B.G. and his mother therefore bears no constitutionally sufficient relationship to AHSAA's asserted interest in preventing coercive or improper athletic recruiting and instead penalizes B.G. because of the athletic subject matter of otherwise permissible communications.

263. AHSAA's enforcement of Rule VI, Section 12 against B.G. and his mother resulted in B.G. being declared permanently ineligible to participate in interscholastic athletics at Mary G. Montgomery High School, while students who voluntarily seek and receive comparable information concerning non-athletic programs suffer no comparable penalty.

264. By intentionally treating B.G. and his mother, Ashley Davis. differently from similarly situated prospective students and families based upon the athletic content of the communications at issue, and by imposing permanent athletic ineligibility upon B.G. as a consequence of those communications,

Defendants have deprived B.G. and his mother, Ashley Davis of the equal protection of the laws secured by the Fourteenth Amendment.

265. Defendants acted under color of state law within the meaning of 42 U.S.C. § 1983 in applying and enforcing Rule VI, Section 12 against B.G.

266. As a direct and proximate result of Defendants' unconstitutional application of Rule VI, Section 12, B.G. and his Mother have suffered and continues to suffer irreparable injury, including the loss of his opportunity to participate in interscholastic athletics at Mary G. Montgomery High School.

267. B.G. and Ashley Davis are therefore entitled to declaratory and prospective injunctive relief pursuant to 42 U.S.C. § 1983 and other applicable law declaring AHSAA's application of Rule VI, Section 12 unconstitutional as applied to B.G. and Ashley Davis and enjoining Defendants from enforcing the resulting declaration of permanent ineligibility against B.G.

WHEREFORE, Plaintiffs, B.G. and Ashley Davis, respectfully requests that this Court:

a. Enter a declaratory judgment that the challenged "any contact/communication" provision of Rule VI, § 12 violates the First and Fourteenth Amendments, facially and/or as applied to Plaintiff;

b. Preliminarily and permanently enjoin Defendants from enforcing the challenged provision against Plaintiff based upon truthful, non-coercive communications that do not constitute actual recruiting, solicitation, inducement, coercion, or undue influence;

c. Enjoin Defendants from enforcing Plaintiff's permanent ineligibility at Mary G. Montgomery High School arising from the communications challenged herein;

d. Restore Plaintiff's eligibility to participate in interscholastic athletics at Mary G. Montgomery High School;

e. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f. Award such compensatory damages as may be appropriate for the violation of Plaintiff's constitutional rights; and

g. Grant such other and further relief as this Court deems just and appropriate.

h. B.G. and Ashley Davis demand a jury trial on said issues.

## COUNT VII

### 42 U.S.C. § 1983 — FOURTEENTH AMENDMENT DUE PROCESS

### ARBITRARY GOVERNMENTAL ACTION AND ENFORCEMENT OF A RULE WITHOUT LAWFUL AUTHORITY AS TO T.D. AND TOMEKA DALE

268. Plaintiffs realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

269. The Fourteenth Amendment prohibits a state actor from depriving a person of liberty or property without due process of law and protects against governmental action that is arbitrary, capricious, or undertaken without lawful authority.

270. Defendant Alabama High School Athletic Association ("AHSAA") exercises regulatory authority over interscholastic athletics conducted by its member schools and, in enforcing the eligibility determination challenged herein, acted under color of state law within the meaning of 42 U.S.C. § 1983.

271. AHSAA's authority over its member schools and student-athletes is not unlimited. The authority exercised by AHSAA exists pursuant to and is circumscribed by the AHSAA Constitution and Bylaws and the legislative authority delegated by its member schools.

272. Article IV of the AHSAA Constitution vests the authority to make changes to the AHSAA Constitution and Bylaws in the AHSAA Legislative Council.

273. Article XII of the AHSAA Constitution establishes the procedure by which eligibility rules and Bylaws may be amended, including submission of proposed amendments and approval by the requisite vote of the Legislative Council.

274. AHSAA itself represents to its member schools that its Constitution and Bylaws are established through this legislative process, pursuant to which legislative proposals are submitted by member schools, considered by the membership, voted upon through the prescribed process, and, upon receiving the required approval, incorporated into the AHSAA Handbook.

275. The legislative process established by the AHSAA Constitution is therefore not merely an internal publication procedure but constitutes the source and limitation of AHSAA's authority to create substantive eligibility rules governing member schools and student-athletes.

276. Rule VI, Section 12 historically permitted a coach or other person connected with a member school to speak with a student or parent who, **"on their own,"** visited the school **"for any specific purpose."**

277. Beginning with the 2022–2023 AHSAA Handbook, AHSAA materially altered that provision by inserting the words **"other than athletics,"** thereby transforming conduct previously permitted by the express language of the Rule into prohibited conduct whenever the subject of the communication concerned athletics.

278. The addition of the words "other than athletics" was substantive rather than editorial because it altered the legal consequence of the same conduct: a student and parent who independently visited a school could previously communicate with school personnel for "any specific purpose," whereas after the addition they could no longer engage in the same communication if its subject concerned athletics.

279. Upon information and belief, the phrase "other than athletics" was not adopted pursuant to a written legislative proposal submitted and approved in accordance with the amendment procedure required by the AHSAA Constitution.

280. Upon information and belief, no legislative proposal submitted to AHSAA member schools identified the addition of "other than athletics" to Rule VI, Section 12 as a proposed amendment to the Rule.

281. Upon information and belief, AHSAA member schools were not afforded the opportunity contemplated by the AHSAA legislative process to

consider and vote upon the substantive amendment before it was inserted into the Handbook.

282. Upon information and belief, the AHSAA Legislative Council did not approve the addition of "other than athletics" to Rule VI, Section 12 by the constitutionally required two-thirds vote applicable to amendments of AHSAA eligibility rules and Bylaws.

283. Mere inclusion of substantive language in an annually published Handbook cannot independently create legislative authority that the AHSAA Constitution reserves to the Legislative Council acting through the prescribed amendment process.

284. Likewise, approval of the publication of an annual Handbook cannot substitute for the legislative enactment of a substantive eligibility rule where the AHSAA Constitution requires that amendments and changes to eligibility rules be enacted through a specified legislative process.

285. Publication may memorialize a duly enacted Bylaw, but publication itself cannot supply legislative authority for a substantive restriction that was never lawfully enacted.

286. AHSAA's own historical practices demonstrate its recognition that substantive amendments to "Notes" contained within its Bylaws are subject to the legislative process, including prior legislative proposals expressly

adding, deleting, or modifying language appearing within Notes to AHSAA eligibility rules.

287. Nevertheless, AHSAA enforced the unapproved "other than athletics" restriction against T.D and his mother, Tomeka Dale, as though that language constituted a duly enacted and enforceable AHSAA Bylaw.

288. AHSAA relied upon that restriction to characterize otherwise permissible communications between T.D., his mother, and persons associated with Mary G. Montgomery High School as prohibited recruiting.

289. AHSAA thereafter imposed the extraordinary sanction of permanently declaring T.D. ineligible to participate in interscholastic athletics at Mary G. Montgomery High School based upon conduct allegedly prohibited by the disputed restriction.

290. Under Alabama law, although courts ordinarily defer to AHSAA in the administration of duly enacted eligibility rules, such deference does not extend to actions resulting from **fraud, collusion, lack of jurisdiction, or arbitrariness.** *Scott v. Kilpatrick*, 286 Ala. 129, 132–33, 237 So. 2d 652, 655 (1970).

291. The Alabama Supreme Court reaffirmed this limitation in *Alabama High School Athletic Association v. Rose*, 446 So. 2d 1, 5 (Ala. 1984), holding that judicial intervention is authorized where one or more of the recognized

grounds, including arbitrariness, is established by clear and convincing evidence.

292. The Alabama Supreme Court has continued to recognize that a court may overturn an AHSAA decision upon the requisite showing of **"fraud, collusion, lack of jurisdiction by the Association, or arbitrariness."** *Ex parte Alabama High School Athletic Association*, 229 So.3d 1100, (Ala. 2017).

293. AHSAA lacks jurisdiction or authority to impose eligibility sanctions upon a student for violation of a substantive restriction that never became a valid AHSAA Bylaw through the legislative process required by AHSAA's own Constitution.

294. Alternatively, enforcing such an unapproved substantive restriction against T.D. and his mother while treating it as having the force and effect of a duly enacted Bylaw constitutes arbitrary and capricious governmental action.

295. The arbitrariness is particularly pronounced because AHSAA has historically utilized its formal legislative process when making substantive changes to Notes and other provisions of its eligibility rules, yet Defendants seek to impose permanent ineligibility upon T.D. pursuant to language for which no comparable legislative enactment has been identified.

296. AHSAA cannot simultaneously maintain that its substantive eligibility rules derive their authority from a defined legislative process controlled by its member schools while asserting authority to create and enforce materially different eligibility restrictions merely by inserting language into a subsequently published Handbook.

297. Such an interpretation would render the legislative protections contained within the AHSAA Constitution meaningless and permit AHSAA administrators to accomplish through publication what the Constitution reserves to the Legislative Council depriving individual member schools of their voice in the legislative process.

298. Defendants' enforcement of the disputed restriction against T.D. and his mother therefore was not merely an erroneous interpretation of an otherwise valid eligibility rule but constituted the exercise of governmental authority without the predicate legislative authority necessary to create the prohibition being enforced.

299. The permanent ineligibility imposed upon T.D. is consequently the product of arbitrary governmental action and the enforcement of a substantive restriction beyond the lawful authority conferred upon Defendants.

300. Defendants' arbitrary enforcement is further demonstrated by applying the recruiting prohibition to T.D. and his mother notwithstanding that T.D. and his mother independently sought information concerning Mary G. Montgomery High School, were not individually solicited to visit the school, and had undertaken the decision and necessary steps to enroll T.D. at MGM before learning of the communication or event characterized by AHSAA as recruiting.

301. Under those circumstances, application of a recruiting prohibition bears no reasonable relationship to the conduct the recruiting rule purports to prohibit—namely, the use of athletic solicitation or inducement to cause a prospective student to transfer or enroll at a member school for athletic purposes.

302. The arbitrary character of Defendants' action is compounded by the severity of the sanction imposed: permanent ineligibility at Mary G. Montgomery High School upon a student whose decision to attend that school preceded the allegedly prohibited communication.

303. Defendants' enforcement of a substantive restriction that was never lawfully enacted, and their resulting permanent disqualification of T.D. constitutes arbitrary governmental action prohibited by the Fourteenth Amendment and actionable pursuant to 42 U.S.C. § 1983.

304. Plaintiffs, T.D. and his mother, Tomeka Dale are therefore entitled to declaratory and prospective injunctive relief declaring Defendants' application of the disputed provisions of Rule VI, Section 12 unconstitutional as applied to T.D and his mother and enjoining Defendants from enforcing the resulting determination of permanent ineligibility.

305. AHSAA itself represents to its member schools that its Constitution and Bylaws are established through this legislative process, pursuant to which legislative proposals are submitted by member schools, considered by the membership, voted upon through the prescribed process, and, upon receiving the required approval, incorporated into the AHSAA Handbook.

306. Due to the fact, the AHSAA never mentioned any amendments to Rule VI § 12 other than the stated approved amendment, changing the word "shall" to "may" as approved during the 2015 Legislative Council meeting as reported in the AHSAA News Letter.

307. Also, due to the lack of the <NOTE> section which prohibits all forms of communication between a coach and a student athlete and the phrase "other than athletics" not being highlighted in the AHSAA Handbook in the year they first appeared leads one to believe these amendments to the rules were never approved through the appropriate legislative process beginning with a

written proposal by a member school's principal and concluding with two thirds majority vote to approve the proposal by the Legislative Council.

WHEREFORE, Plaintiffs T.D. and Tomeka Dale respectfully requests that this Court:

a. Enter a declaratory judgment that the challenged "any contact/communication" provision of Rule VI, § 12 violates the First and Fourteenth Amendments, facially and/or as applied to Plaintiff;

b. Preliminarily and permanently enjoin Defendants from enforcing the challenged provision against T.D. And his mother based upon truthful, non-coercive communications that do not constitute actual recruiting, solicitation, inducement, coercion, or undue influence;

c. Enjoin Defendants from enforcing T.D.'s permanent ineligibility at Mary G. Montgomery High School arising from the communications challenged herein;

d. Restore T.D.'s eligibility to participate in interscholastic athletics at Mary G. Montgomery High School;

e. Award Plaintiffs T.D. and Tomeka Dale reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f. Award such compensatory damages as may be appropriate for the violation of T.D. and Tomeka Dale's constitutional rights; and

g. Grant such other and further relief as this Court deems just and appropriate.

h. Plaintiffs T.D. and Tomeka Dale demand a jury trial on said issues.

## COUNT VIII

DECLARATORY AND INJUNCTIVE RELIEF UNDER ALABAMA LAW

AHSAA ACTION IN EXCESS OF JURISDICTION AND ARBITRARY ENFORCEMENT — *SCOTT v. KILPATRICK* / *AHSAA v. ROSE* AS TO T.D. AND TOMEKA DALE

308. Plaintiff realleges paragraphs 1 through 153.

309. Alabama law ordinarily affords substantial deference to AHSAA's administration and enforcement of its duly enacted rules. That deference, however, is expressly conditioned upon AHSAA acting within the jurisdiction and authority conferred upon it by its governing documents.

310. In *Scott v. Kilpatrick*, the Alabama Supreme Court held that Alabama courts will intervene where AHSAA's actions result from "fraud, lack of jurisdiction, collusion, or arbitrariness." *AHSAA v. Rose*, 286 Ala. at 132–33, 237 So. 2d at 655.

311. *Rose* reaffirmed the *Scott* standard and held that the requisite jurisdiction for judicial intervention exists when the recognized grounds are established by clear and convincing evidence. *AHSAA v. Rose*, 446 So. 2d at 5.

312. AHSAA cannot possess greater jurisdiction to enforce an eligibility restriction than the jurisdiction possessed by the body that purportedly created it. Where the AHSAA Constitution reserves substantive rule making to the Legislative Council and the challenged restriction was never enacted by that body through the required process, AHSAA's Executive Director cannot acquire authority to enforce that restriction merely because the language subsequently appeared in a printed Handbook.

WHEREFORE, Plaintiff T.D. respectfully requests that this Court:

a. Enter a declaratory judgment that the challenged "any contact/communication" provision of Rule VI, § 12 violates the Fourteenth Amendment, facially and/or as applied to Plaintiffs, T.D. and Tomeka Dale;

b. Preliminarily and permanently enjoin Defendants from enforcing the challenged provision against Plaintiffs, T.D. and Tomeka Dale based upon truthful, non coercive communications that do not constitute actual recruiting, solicitation, inducement, coercion, or undue influence;

c. Enjoin Defendants from enforcing T.D.'s permanent ineligibility at Mary G. Montgomery High School arising from the communications challenged herein;

d. Restore T.D.'s eligibility to participate in interscholastic athletics at Mary G. Montgomery High School;

e. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f. Award such compensatory damages as may be appropriate for the violation of Plaintiff's constitutional rights; and

g. Grant such other and further relief as this Court deems just and appropriate.

h. Plaintiffs T.D. and Tomeka Dale demand a jury trial on said issues.

**COUNT IX**

**42 U.S.C. § 1983 — FOURTEENTH AMENDMENT DUE PROCESS**

**ARBITRARY GOVERNMENTAL ACTION AND ENFORCEMENT OF A RULE WITHOUT LAWFUL AUTHORITY**

**AS TO PLAINTIFFS B.G. AND ASHLEY DAVIS**

313. Plaintiffs realleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as though fully set forth herein.

314. The Fourteenth Amendment prohibits a state actor from depriving a person of liberty or property without due process of law and protects against governmental action that is arbitrary, capricious, or undertaken without lawful authority.

315. Defendant Alabama High School Athletic Association ("AHSAA") exercises regulatory authority over interscholastic athletics conducted by its member schools and, in enforcing the eligibility determination challenged herein, acted under color of state law within the meaning of 42 U.S.C. § 1983.

316. AHSAA's authority over its member schools and student-athletes is not unlimited. The authority exercised by AHSAA exists pursuant to and is circumscribed by the AHSAA Constitution and Bylaws and the legislative authority delegated by its member schools.

317. Article IV of the AHSAA Constitution vests the authority to make changes to the AHSAA Constitution and Bylaws in the AHSAA Legislative Council.

318. Article XII of the AHSAA Constitution establishes the procedure by which eligibility rules and Bylaws may be amended, including submission of

proposed amendments and approval by the requisite vote of the Legislative Council.

319. AHSAA itself represents to its member schools that its Constitution and Bylaws are established through this legislative process, pursuant to which legislative proposals are submitted by member schools, considered by the membership, voted upon through the prescribed process, and, upon receiving the required approval, incorporated into the AHSAA Handbook.

320. The legislative process established by the AHSAA Constitution is therefore not merely an internal publication procedure but constitutes the source and limitation of AHSAA's authority to create substantive eligibility rules governing member schools and student-athletes.

321. Rule VI, Section 12 historically permitted a coach or other person connected with a member school to speak with a student or parent who, **"on their own,"** visited the school **"for any specific purpose."**

322. Beginning with the 2022–2023 AHSAA Handbook, AHSAA materially altered that provision by inserting the words **"other than athletics,"** thereby transforming conduct previously permitted by the express language of the Rule into prohibited conduct whenever the subject of the communication concerned athletics.

323. The addition of the words "other than athletics" was substantive rather than editorial because it altered the legal consequence of the same conduct: a student and parent who independently visited a school could previously communicate with school personnel for "any specific purpose," whereas after the addition they could no longer engage in the same communication if its subject concerned athletics.

324. Upon information and belief, the phrase "other than athletics" was not adopted pursuant to a written legislative proposal submitted and approved in accordance with the amendment procedure required by the AHSAA Constitution.

325. Upon information and belief, no legislative proposal submitted to AHSAA member schools identified the addition of "other than athletics" to Rule VI, Section 12 as a proposed amendment to the Rule.

326. Upon information and belief, AHSAA member schools were not afforded the opportunity contemplated by the AHSAA legislative process to consider and vote upon the substantive amendment before it was inserted into the Handbook.

327. Upon information and belief, the AHSAA Legislative Council did not approve the addition of "other than athletics" to Rule VI, Section 12 by the

constitutionally required two-thirds vote applicable to amendments of AHSAA eligibility rules and Bylaws.

328. Mere inclusion of substantive language in an annually published Handbook cannot independently create legislative authority that the AHSAA Constitution reserves to the Legislative Council acting through the prescribed amendment process.

329. Likewise, approval of the publication of an annual Handbook cannot substitute for the legislative enactment of a substantive eligibility rule where the AHSAA Constitution requires that amendments and changes to eligibility rules be enacted through a specified legislative process.

330. Publication may memorialize a duly enacted Bylaw, but publication itself cannot supply legislative authority for a substantive restriction that was never lawfully enacted.

331. AHSAA's own historical practices demonstrate its recognition that substantive amendments to "Notes" contained within its Bylaws are subject to the legislative process, including prior legislative proposals expressly adding, deleting, or modifying language appearing within Notes to AHSAA eligibility rules.

332. Nevertheless, AHSAA enforced the unapproved "other than athletics" restriction against B.G. and his mother as though that language constituted a duly enacted and enforceable AHSAA Bylaw.

333. AHSAA relied upon that restriction to characterize otherwise permissible communications between B.G. and his mother, and persons associated with Mary G. Montgomery High School as prohibited recruiting.

334. AHSAA thereafter imposed the extraordinary sanction of permanently declaring B.G. ineligible to participate in interscholastic athletics at Mary G. Montgomery High School based upon conduct allegedly prohibited by the disputed restriction.

335. Under Alabama law, although courts ordinarily defer to AHSAA in the administration of duly enacted eligibility rules, such deference does not extend to actions resulting from **fraud, collusion, lack of jurisdiction, or arbitrariness.** *Scott v. Kilpatrick*, 286 Ala. 129, 132–33, 237 So. 2d 652, 655 (1970).

336. The Alabama Supreme Court reaffirmed this limitation in *Alabama High School Athletic Association v. Rose*, 446 So. 2d 1, 5 (Ala. 1984), holding that judicial intervention is authorized where one or more of the recognized grounds, including arbitrariness, is established by clear and convincing evidence.

337. The Alabama Supreme Court has continued to recognize that a court may overturn an AHSAA decision upon the requisite showing of **"fraud, collusion, lack of jurisdiction by the Association, or arbitrariness."** *Ex parte Alabama High School Athletic Association*, 229 So.3d 1100, (Ala. 2017).

338. AHSAA lacks jurisdiction or authority to impose eligibility sanctions upon a student for violation of a substantive restriction that never became a valid AHSAA Bylaw through the legislative process required by AHSAA's own Constitution.

339. Alternatively, enforcing such an unapproved substantive restriction against B.G. and his mother, Ashley Davis, while treating it as having the force and effect of a duly enacted Bylaw constitutes arbitrary and capricious governmental action.

340. The arbitrariness is particularly pronounced because AHSAA has historically utilized its formal legislative process when making substantive changes to Notes and other provisions of its eligibility rules, yet Defendants seek to impose permanent ineligibility upon B.G. pursuant to language for which no comparable legislative enactment has been identified.

341. AHSAA cannot simultaneously maintain that its substantive eligibility rules derive their authority from a defined legislative process controlled by

its member schools while asserting authority to create and enforce materially different eligibility restrictions merely by inserting language into a subsequently published Handbook.

342. Such an interpretation would render the legislative protections contained within the AHSAA Constitution meaningless and permit AHSAA administrators to accomplish through publication what the Constitution reserves to the Legislative Council depriving individual member schools of their voice in the legislative process.

343. Defendants' enforcement of the disputed restriction against T.D. therefore was not merely an erroneous interpretation of an otherwise valid eligibility rule but constituted the exercise of governmental authority without the predicate legislative authority necessary to create the prohibition being enforced.

344. The permanent ineligibility imposed upon B.G. is consequently the product of arbitrary governmental action and the enforcement of a substantive restriction beyond the lawful authority conferred upon Defendants.

345. Defendants' arbitrary enforcement is further demonstrated by applying the recruiting prohibition to B.G. and his mother, notwithstanding that B.G. and his mother independently sought information concerning Mary G.

Montgomery High School, were not individually solicited to visit the school, and had undertaken the decision and necessary steps to enroll B.G. at MGM before learning of the communication or event characterized by AHSAA as recruiting.

346. Under those circumstances, application of a recruiting prohibition bears no reasonable relationship to the conduct the recruiting rule purports to prohibit—namely, the use of athletic solicitation or inducement to cause a prospective student to transfer or enroll at a member school for athletic purposes.

347. The arbitrary character of Defendants' action is compounded by the severity of the sanction imposed: permanent ineligibility at Mary G. Montgomery High School upon a student whose decision to attend that school preceded the allegedly prohibited communication.

348. Defendants' enforcement of a substantive restriction that was never lawfully enacted, and their resulting permanent disqualification of B.G. from athletics at MGM, constitutes arbitrary governmental action prohibited by the Fourteenth Amendment and actionable pursuant to 42 U.S.C. § 1983.

349. Plaintiffs, B.G. and his mother, Ashley Davis are therefore entitled to declaratory and prospective injunctive relief declaring Defendants' application of the disputed provisions of Rule VI, Section 12 unconstitutional

as applied to B.G. and enjoining Defendants from enforcing the resulting determination of permanent ineligibility.

350. AHSAA itself represents to its member schools that its Constitution and Bylaws are established through this legislative process, pursuant to which legislative proposals are submitted by member schools, considered by the membership, voted upon through the prescribed process, and, upon receiving the required approval, incorporated into the AHSAA Handbook.

351. Due to the fact, the AHSAA never mentioned any amendments to Rule VI § 12 other than the stated approved amendment, changing the word "shall" to "may" as approved during the 2015 Legislative Council meeting as reported in the AHSAA News Letter.

352. Also, due to the lack of the <NOTE> section which prohibits all forms of communication between a coach and a student athlete and the phrase "other than athletics" not being highlighted in the AHSAA Handbook in the year they first appeared leads one to believe these amendments to the rules were never approved through the appropriate legislative process beginning with a written proposal by a member school's principal and concluding with two thirds majority vote to approve the proposal by the Legislative Council.

WHEREFORE, Plaintiffs B.G. and Ashley Davis, respectfully requests that this Court:

a. Enter a declaratory judgment that the challenged "any contact/communication" provision of Rule VI, § 12 violates the First and Fourteenth Amendments, facially and/or as applied to Plaintiffs B.G. and Ashley Davis;

b. Preliminarily and permanently enjoin Defendants from enforcing the challenged provision against Plaintiffs, B.G. and Ashley Davis based upon truthful, non-coercive communications that do not constitute actual recruiting, solicitation, inducement, coercion, or undue influence;

c. Enjoin Defendants from enforcing B.G.'s permanent ineligibility at Mary G. Montgomery High School arising from the communications challenged herein;

d. Restore B.G.'s eligibility to participate in interscholastic athletics at Mary G. Montgomery High School;

e. Award Plaintiffs B.G. and Ashley Davis reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f. Award such compensatory damages as may be appropriate for the violation of Plaintiffs B.D. and Ashley Davis' constitutional rights; and

g. Grant such other and further relief as this Court deems just and appropriate.

h. Plaintiffs B.G. and Ashley Davis demand a jury trial on said issues.

# COUNT X

## DECLARATORY AND INJUNCTIVE RELIEF UNDER ALABAMA LAW

## AHSAA ACTION IN EXCESS OF JURISDICTION AND ARBITRARY ENFORCEMENT — *SCOTT v. KILPATRICK* / *AHSAA v. ROSE* AS TO B.G.. AND ASHLEY DAVIS

353. Plaintiff realleges paragraphs 1 through 153.

354. Alabama law ordinarily affords substantial deference to AHSAA's administration and enforcement of its duly enacted rules. That deference, however, is expressly conditioned upon AHSAA acting within the jurisdiction and authority conferred upon it by its governing documents.

355. In *Scott v. Kilpatrick*, the Alabama Supreme Court held that Alabama courts will intervene where AHSAA's actions result from "fraud, lack of jurisdiction, collusion, or arbitrariness." *AHSAA v. Rose*, 286 Ala. at 132–33, 237 So. 2d at 655.

356. *Rose* reaffirmed the *Scott* standard and held that the requisite jurisdiction for judicial intervention exists when the recognized grounds are

established by clear and convincing evidence. *AHSAA v. Rose*, 446 So. 2d at 5.

357. AHSAA cannot possess greater jurisdiction to enforce an eligibility restriction than the jurisdiction possessed by the body that purportedly created it. Where the AHSAA Constitution reserves substantive rule making to the Legislative Council and the challenged restriction was never enacted by that body through the required process, AHSAA's Executive Director cannot acquire authority to enforce that restriction merely because the language subsequently appeared in a printed Handbook.

WHEREFORE, Plaintiffs B.G. and Ashley Davis respectfully requests that this Court:

a. Enter a declaratory judgment that the challenged "any contact/communication" provision of Rule VI, § 12 violates the First and Fourteenth Amendments, facially and/or as applied to Plaintiffs, B.G. and Ashley Davis;

b. Preliminarily and permanently enjoin Defendants from enforcing the challenged provision against Plaintiffs, B.G. and Ashley Davis based upon truthful, non coercive communications that do not constitute actual recruiting, solicitation, inducement, coercion, or undue influence;

c. Enjoin Defendants from enforcing B.G.'s permanent ineligibility at Mary G. Montgomery High School arising from the communications challenged herein;

d. Restore B.G.'s eligibility to participate in interscholastic athletics at Mary G. Montgomery High School;

e. Award Plaintiff reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988;

f. Award such compensatory damages as may be appropriate for the violation of Plaintiff's constitutional rights; and

g. Grant such other and further relief as this Court deems just and appropriate.

h. Plaintiffs B.G. and Ashley Davis demand a jury trial on said issues.

**s/MICHAEL L. KIDD**
Michael L. Kidd – Attorney at Law
Attorney for the Plaintiff
138 Adams Ave. Suite III
Montgomery, AL 36104
(334) 834-5433
uakidd@gmail.com

DEFENDANTS TO BE SERVED BY PROCESS SERVER.